JOHN E. NORTON, Plaintiff-Appellant, v. PAUL C. NICHOLSON *et al.*, Defendants-Appellees.

First District (3rd Division) No. 1—87—1477

Opinion filed August 30, 1989.—Rehearing denied September 27, 1989.

John E. Norton, of Chicago, appellant *pro se.*

Thomas H. Donohoe, of Chicago, for appellees.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, John E. Norton, initiated this judicial proceeding by filing a complaint for administrative review and declaratory judgment. A third amended complaint was subsequently filed by plaintiff, *pro se*, naming as defendants Paul C. Nicholson, Frank G. Benak, Lois J. Fleming and the Village of Western Springs (the Village). In his third amended complaint, consisting of eight counts and three volumes of attached exhibits, plaintiff sought the issuance of a writ of *certiorari* for judicial review of a decision of an administrative agency, *mandamus*, declaratory relief, injunctive relief and damages pursuant to 42 U.S.C. §1983 (1976). The trial court dismissed the third amended complaint on the basis that it was insufficient to state a cause of action, and denied plaintiff leave to file a fourth amended complaint. We affirm.

Defendant Benak is the fire chief for the Village Department of Fire and Emergency Medical Services (the Department). Plaintiff was employed for 10 years as a part-time employee for the Department. He was classified as a fire fighter/EMT and he received a salary on an hourly basis for fire fighting, rescue and emergency medical duties, conducting training and educational sessions, stand-by coverage, and other special duties.

On July 2, 1984, plaintiff prepared a memorandum which he addressed to the Village "Chain of Command." He distributed the memorandum to four lieutenants who were his immediate superiors in the Department. The memorandum was critical of a change in fire apparatus response and procedure, and the memorandum made it plain that the plaintiff had unsuccessfully attempted to bring his criticism to the attention of the fire chief, Benak. The memorandum states:

"I tried to clarify some of this with the Fire Chief, but he 'made a face' and walked away from me without a word. I can only guess that he couldn't answer unless it went through the 'chain of command.' "

Although plaintiff's memorandum was not addressed to Benak or given to Benak by plaintiff, it was received by Benak. On July 3, 1984, Benak sent the following letter to plaintiff:

"I have received a copy of your July 2, 1984 memo.

As I look over the past several years I can see the progress that has been made in the area of fire protection and emergency medical services. Much of this progress is due in no small part to your work.

However, in every organization there comes a time when people must pull together without constant sniping, backbiting

and sarcasm. I am therefore requesting that you tender your resignation to this department, effective immediately."

On July 4, 1984, plaintiff sent Benak a letter advising him that he would not comply with his request to resign from the Department. Plaintiff's letter states, *inter alia*:

"I also find it difficult to comprehend how I am to be responsible for the 'constant sniping, backbiting, and sarcasm' going on in the department when, in fact, my presence at the fire station has minimized for the express purpose of avoiding the significant constant sniping, backbiting, and sarcasm that has been going on, often in your presence and sometimes at your instigation. I'm not accusing you of any wrongdoing, just that you have fostered the very activity that you now criticize. *Every* instance in which you have requested some action or inaction on my part I have complied with, with the exception of activities that were illegal, unethical, or unsafe. As you know, I have always felt compelled to comment, within the rational modes of communication, illegal activities, unsafe practices, tactical flaws, unsound training pedagogy, etc. You also should know that you, personally, have encouraged such activity on my part when it suited your needs (and I have documentation to that effect). What is most surprising is that during the lowest level of such activity on my part in the last decade, you should now find it objectionable.

* * *

Sincerely,
John E. Norton

'Assassination is the extreme form of censorship.'—George Bernard Shaw

'It's impossible for ideas to compete in the marketplace if no forum for their presentation is provided or available.'—Thomas Mann.

'Extremists think 'communication' means agreeing with them.'—Leo Rosten

'Knowledge without conscience is the ruination of the soul.'—Francois Rabelais" (Emphasis in original.)

On July 5, 1984, Benak sent plaintiff a letter advising him that he was being terminated as a fire fighter as of July 5, 1984. The letter states, *inter alia*:

"The grounds for dismissal are as follows:
(a) Village Personnel Manual
Chapter IX, Section 9.1

1.11 That the employee is antagonistic in attitude toward his superior officers or other employees, criticizing orders or policies issued and policies adopted by superiors or so acts as to interfere with proper cooperation of employees of the Village to the detriment of efficient public service.

(b) Fire Department Rules and Regulations 1—5—3

2. If the employee has been abusive in attitude, conduct and language in public, or toward the public, Village officials or employees, or has been abusive in conduct resulting in physical harm or injury to other employees or the public, either on or off duty.

Attached is Chapter XI of the Personnel Code stating appeal procedures.''

Plaintiff requested an appeal of Benak's action in terminating his employment with the Department. Accordingly, an administrative hearing was had on July 23, 1984, before the village manager, Nicholson, and the director of personnel, Fleming. Plaintiff and his representative submitted both oral presentations and written documents. Also, plaintiff was afforded added time to submit additional documents, which were subsequently submitted.

One of the documents, dated July 26, 1984, submitted by plaintiff relates to his past verbal discussions with Benak on procedural and operation matters. The document states:

"[The] following is a conservative estimate of some of the verbal criticisms I've communicated to the Fire Chief within the past two years:

- At least on two occasions (prior to written memo) criticizing the commonly practiced 'alternator load dumping;'
- At least two times criticizing the allowance of oil and paint use or storage near oxygen cylinders;
- Over three times criticizing hose loads, lengths, or treatment;
- Several times criticizing lack of certain equipment to be carried on apparatus, Fire & EMS;
- Numerous times criticizing backing hazards, personnel riding on rear step, standing up in jump seats, not wearing air packs;
- Several times criticizing the methodology of hydrant testing and color coding of hydrants;
- Several times criticizing the lack of conforming to IDPH requirements in drills and paperwork;
- At least two times criticizing the elimination of a deluge on Engine 440;
- Numerous times criticizing lack of concern for ISO require-

ments (both before and after his 'newfound interest');
- Several times criticizing Engine 440's procedure on fire alarms in sprinklered buildings;
- Several times (over 3) criticizing contents of Engine 440's hydrant hookup bag;
- At least ten times criticizing his 'holding up' apparatus;
- One time criticizing practice of riding with open rear windows of ambulance 340 (a CO hazard);
- Numerous times about illegal use and nonuse of emergency warning devices;
- Several times criticizing not communicating the need to replace the 'Snorkel' with an aerial ladder;
- Several times criticizing the lack of use of apparatus to secure accident scenes;
- At least two times criticizing his lack of restriction as to who is qualified to drive fire apparatus;
- Two times criticizing his poor example by not wearing protective clothing at fire scene.

In *no* instance of any of the above verbal communication was any hint of violation of any rules or regulations given. In some of the above instances, raised voices and harsh words were generated by both of us and witnessed by others." (Emphasis in original.)

On August 16, 1984, Nicholson advised plaintiff of his written decision as the village manager. The decision, which changed plaintiff's dismissal to a 30-day suspension, provides, *inter alia*:

## FINDINGS
"[My] findings regarding your appeal are as follows:

(1) That the disciplinary decision of the Director of Fire and Emergency Medical Services that your drafting and distribution of a memorandum dated July 2, 1984, addressed to 'The Chain of Command' from yourself constituted a violation of the above-referenced sections of the Village Personnel Manual and the Fire Department Rules and Regulations is affirmed.

(2) That the order of dismissal from the Department of Fire and Emergency Medical Services be reduced to suspension for a period of thirty (30) days without pay, effective August 16, 1984, and ending September 14, 1984.

(3) That the Director of Fire and Emergency Medical Services delineate in writing those specific elements of performance and conduct to which you are expected to conform, which are at-

tached hereto and upon which your performance shall be evaluated and reviewed over a ninety (90) day period commencing August 16, 1984, and ending November 15, 1984.

(4) That the Director of Personnel provide you with compensation for the period of time from July 5, 1984 through August 15, 1984, based upon your demonstrated level of participation with the department over the twelve (12) months preceding this action.

## DISCUSSION

The foregoing findings are based upon my review of your actions [of] July 2, 1984, in the issuance of the subject memorandum. In the opinion of this reviewer, those actions were clearly a violation of the Western Springs Personnel Manual, Chapter IX, Section 9—1, 1.11 and Section 1—5—3, 2 of the Fire Department Rules and Regulations, in that as an employee, you were antagonistic in your attitude toward your superior, that you criticized his orders and policies as issued and adopted, and as such, interfered with the proper cooperation of employees at the Village to the detriment of efficient pubic service; clearly, a breach of minimum standards of conduct, and work performance.

Further, your actions in issuing your memorandum dated July 2, 1984, exhibit an attitude and type of individual behavior which, while in the past may have been tolerated, will no longer be tolerated or permitted. Such actions are not acceptable employee behavior.

Furthermore, your memorandum dated July 2, 1984, whether intended or otherwise, constituted an embarrassment to the Director of Fire and Emergency Medical Services, and a direct challenge to his authority as the chief operating officer of the department, Village management and the Village Board. The selected distribution of this memorandum to the officer core of the department constituted a disruptive action detrimental to the efficient operation of the department and the need for all employees within the department to cooperate toward the achievement of common organizational goals in the delivery of fire and emergency medical services to the residents of the Village of Western Springs.

Under the foregoing circumstances, in my judgment, Chief Benak did not act unreasonably, or in an arbitrary fashion in finding that your actions of July 2, 1984, were a serious breach of the provisions of the Western Springs Personnel Manual and

the Fire Department Rules and Regulations which warranted serious disciplinary action.

* * *

## CONCLUSION

In conclusion, it is appropriate that I recognize the fact that you have made a contribution to the Western Springs Department of Fire and Emergency Medical Services. However, it is appropriate that we underscore that all employees must cooperate and work toward the achievement of common organizational goals and objectives as set forth by the department head, Village management and the Village Board. Failure to do so will result in further disciplinary action and/or possible dismissal from the department. It is our hope that the severity of this incident, and the resulting discipline, will serve to amend your behavior so as enable you to continue to be able to contribute to the department."

Pursuant to Findings paragraph (3), plaintiff was given a written directive from Benak, dated August 18, 1984, which provides:

"FROM: Frank C. Benak, Director of Fire and EMS

RE: John Norton Disciplinary Action

In order to promote departmental function and progress, the employee shall at all times conduct himself according to the following:

(1) Refrain from all activities in which the employee is antagonistic in attitude toward his superior officers, or other employees, criticizing orders or policies issued, and policies adopted by superiors, or so acts as to interfere with proper cooperation of employees of the Village to the detriment of efficient public service.

(2) Refrain from all activity in which the employee may induce, or attempt to induce, an officer or an employee of the Village to commit an unlawful act, or to act in violation of any lawful departmental or official regulation or order.

(3) In matters of general conduct not within the scope of departmental rules and regulations, the employee shall be governed by the ordinary and accepted rules of good behavior observed by law abiding and self-respecting citizens. He shall be held strictly responsible for disorderly, disgraceful, and unlawful conduct, or the commission of any act tending to bring discredit to, or adversely reflect upon, the department, whether on or off duty.

(4) When the employee wishes to discuss or question departmental rules or regulations, or lawfully issued orders or policies, the employee shall request an appointment with either the Assistant Chief or Chief of the department to discuss the matter.

Failure to observe basic rules of conduct and performance, as outlined in the Village Personnel and Fire Department Rules and Regulations, will result in further disciplinary action, as provided by the manuals."

Within 30 days from receipt of Benak's written directive, plaintiff filed his complaint for administrative review and declaratory judgment. On January 7, 1985, while the suit was pending in the circuit court, plaintiff wrote a memorandum addressed to the assistant fire chief, which criticized a proposed change in the use of some newly purchased fire department equipment. Plaintiff, the assistant fire chief and Benak were on the committee that had approved the prior method for the use of the new equipment. While he was a member of that committee, at the direction of committee members Benak and the assistant fire chief, plaintiff had written a report justifying the position that had been taken by that committee.

In his January 7, 1985, memorandum to the assistant fire chief, plaintiff made reference to the fact that as a member of the former committee, he had written a report justifying the position that had been taken by the former committee, and that he had done so at the direction of Benak and the assistant fire chief. After criticizing the proposed change, plaintiff stated in his January 7, 1985, memorandum:

"I guess I was just totally 'suckered' into an insincere ploy and became a party to deceitful communication."

Plaintiff also stated in his memorandum that in assessing the proposed change one "approach renders the following judgment: Either all three of us on the committee were really stupid, ill-advised, and naive; or we are guilty of willful deceit and connivance; or someone has an extremely short memory."

On January 31, 1985, Benak sent plaintiff the following letter terminating his employment:

"You are hereby notified that you are being terminated as a volunteer firefighter-EMT for the Village of Western Springs Department of Fire and Emergency Medical Services.

On August 17, 1984, as part of a proceeding which led to your suspension for thirty (30) days, you were requested orally and in writing to refrain from all activities in which you were antagonistic in attitude toward your superior officers. You were requested to refrain from actions which criticized orders or poli-

cies of supervisors, and to refrain from actions which interfere with the proper cooperation of employees of the village to the detriment of efficient public service.

The foregoing standard of conduct is set forth in the Village's Personnel Manual, and applies to all village employees. Further, the Fire Chief's memorandum of August 17, 1984, concluded that your failure to observe such a rule of conduct could result in disciplinary action.

Your letter of January 7, 1985, to Assistant Chief Seivwright, a copy of which is attached, again clearly shows your antagonistic attitude toward superior officers, Mr. Seivwright, and myself; and the manner in which the criticism is stated creates an atmosphere wherein proper cooperation between Fire Department volunteers and their superiors is impossible. Your letter accuses Mr. Seivwright and myself of a conspiracy to mislead the Village Manager and the Board of Trustees; an accusation that is not true, but an accusation now made that raises an issue regarding my integrity and one that places my position with the Village Manager and the Board of Trustees in question. As a result, your actions lead me to again conclude that your presence is detrimental to the spirit of teamwork and cooperation needed in the Department of Fire and Emergency Medical Services, and therefore, I am terminating you as a volunteer firefighter-EMT."

Plaintiff sent a letter to Nicholson, the village manager, requesting an appeal of his termination. On February 5, 1985, Nicholson sent plaintiff the following notice affirming his termination:

"I am in receipt of an unsigned memorandum dated February 2, 1985, from yourself, appealing your termination from the Western Springs Department of Fire and EMS, effective January 31, 1985, by Director Frank Benak. Specifically, you request an appeal of the notice of termination under the provisions of Article 11—2, Disciplinary Appeal Procedures, Exclusive of Classified Service Employees.

REVIEW

I have completed a review of the facts leading to Chief Benak's disciplinary action of January 31, 1985. I have specifically reviewed your memorandum of January 7, 1985, addressed to Assistant Chief Seivwright, as well as your previous disciplinary record. Further, I have carefully reviewed the contents of the January 7th memorandum with the Village Attorney and

the President and Board of Trustees.

## FINDINGS

As a result of my review of this specific action, I have concluded that a further hearing is not warranted. My findings are as follows:

1) That the contents of a memorandum from yourself to Assistant Chief Seivwright, dated January 7, 1985, are antagonistic toward your superior officers, and interfere with the proper cooperation of the department's employees to the detriment of efficient public safety service.

2) That your action in submitting the subject memorandum was contrary to a disciplinary proceeding on August 17, 1984, at which time you were requested orally and in writing to refrain from activities in which you were antagonistic in attitude toward your superior officers.

3) That the subject memorandum is a violation of basic standards of conduct, as set forth in the department's rules and regulations and the Village Personnel Manual; specifically Article 9.1.11.

4) The accusatory nature of the subject memorandum is detrimental to the spirit of teamwork and cooperation needed within the Department of Fire and Emergency Medical Services in order for that department to meet the health, safety and welfare needs of the residents of the Village of Western Springs.

## CONCLUSION

In conclusion, your actions of January 7th, including the distribution of the memorandum, are not in keeping with acceptable standards of the employer/employee relationship, and certainly not in keeping with acceptable standards of employee conduct. As a result of the foregoing review of this latest incident, the decision of Director Benak is affirmed, and your termination as a Firefighter/EMT with the Western Springs Department of Fire and Emergency Medical Services sustained."

On February 28, 1985, plaintiff filed his first amended complaint for *mandamus*, declaratory relief, and administrative review relating to his suspension and termination. Eventually, plaintiff, *pro se*, filed his third amended complaint for *mandamus*, declaratory relief, and *certiorari* review.

Initially, we note that this case does not fall within the jurisdictional ambit of the Administrative Review Act (Ill. Rev. Stat. 1987, ch.

110, pars. 3—101, 3—102). (*Quinlan & Tyson v. City of Evanston* (1975), 25 Ill. App. 3d 879, 324 N.E.2d 65.) The appropriate method of review of municipal administrative agency decisions is by way of a common law writ of *certiorari*. Thus, we will review this case as though *certiorari* had been granted by the circuit court. *Nowicki v. Evanston Fair Housing Review Board* (1975), 62 Ill. 2d 11, 15, 338 N.E.2d 186, 188; *Quinlan & Tyson*, 25 Ill. App. 3d at 884, 324 N.E.2d at 70.

██ In a common law *certiorari* proceeding, the court determines from the record alone whether there is any evidence fairly tending to support the order reviewed, and the court cannot set aside the order unless it is contrary to the manifest weight of the evidence. Also, it is well established that a decision of an administrative agency should not be reversed unless it is contrary to the manifest weight of the evidence, and that in reviewing a decision of an administrative agency, the findings and conclusions on questions of fact are *prima facie* true and correct. It is not the court's function to resolve conflicting evidence. *Collura v. Board of Police Commissioners* (1986), 113 Ill. 2d 361, 372-73, 498 N.E.2d 1148, 1153; *Nowicki v. Evanston Fair Housing Review Board*, 62 Ill. 2d at 15, 338 N.E.2d at 188; *Piotrowski v. State Police Merit Board* (1980), 85 Ill. App. 3d 369, 374, 406 N.E.2d 863, 867.

██ Here, it is plain from the admitted facts which we have previously set forth that the administrative agency's findings on August 16, 1984, that plaintiff's distribution of his July 2, 1984, memorandum addressed to "The Chain of Command" constituted a violation of the Village personnel manual and the fire department rules and regulations as set forth in the decision. Thus, we conclude that the administrative agency's order of August 16, 1984, is more than fairly supported by the evidence and is not contrary to the manifest weight of the evidence.

 Moreover, as a result of its findings, it was within the realm of reasonable disciplinary action for the administrative agency to suspend plaintiff for a period of 30 days without pay, and to direct that the Director of Fire and Emergency Services delineate in writing those specific elements of performance and conduct to which plaintiff was expected to conform, and upon which plaintiff's performance was to be evaluated and reviewed over a 90-day period. Also, we take notice that no disciplinary action was brought against plaintiff for anything that he did during the 90-day period, and plaintiff does not allege that he refrained from any action or comment during the 90-day period. Thus, from the perspective of a judicial review of an administra-

tive ruling, plaintiff's challenge to the propriety of the August 18, 1984, written directive from Benak is moot.

In addition, in its August 16, 1984, decision, the administrative agency provided that "it is also appropriate that we underscore that all employees must cooperate and work toward the achievement of common organizational goals and objectives as set forth by the department head, Village management and the Village Board. Failure to do so will result in further disciplinary action and/or possible dismissal from the department. It is our hope that the severity of this incident, and the resulting discipline, will serve to amend your behavior so as to enable you to continue to be able to contribute to the department." This admonition and notice of possible dismissal if plaintiff did not amend his behavior was clearly not arbitrary or unreasonable in view of the administrative agency's findings.

■ We next address the administrative agency's findings of February 5, 1985, that the contents of a memorandum from plaintiff to Assistant Chief Seivwright, dated January 5, 1985, were antagonistic toward plaintiff's superior officers and interfered with the proper cooperation of the Department's employees, and that plaintiff's action was contrary to the disciplinary proceeding on August 17, 1984, when he was requested to refrain from activities in which he was antagonistic toward his superior officers. We conclude that it is clear from the admitted facts which we have previously set forth that the administrative agency's findings of February 5, 1985, were more than fairly supported by the record and are not contrary to the manifest weight of the evidence.

We also conclude that based upon the entire record, it was within the realm of reasonable disciplinary action for the administrative agency to terminate plaintiff's employment, especially in view of the fact that he had previously been admonished and put on notice that his failure to amend his behavior would possibly result in dismissal. We therefore hold that a judicial review of this case in accordance with the law applicable to the judicial review of administrative agency decisions establishes that the administrative decisions in this case should be upheld. However, since the trial court dismissed the case on the basis that plaintiff failed to allege a cause of action, we believe that it is proper for us to examine the record, including the exhibits that are part of plaintiff's pleadings, to decide whether plaintiff's third amended complaint (Third Complaint) and proposed fourth amended complaint for damages and injunctive relief (Fourth Complaint) are sufficient to allege a separate cause of action for damages. See *Nowicki v. Evanston Fair Housing Review Board*, 62 Ill. 2d at 15, 338

N.E.2d at 188.

Plaintiff has made multifarious allegations and charges in his eight-count Third Complaint and two-count Fourth Complaint wherein he seeks compensatory damages, punitive damages, costs and attorney fees, as well as other relief to which he might be entitled. However, we agree with the statement in plaintiff's Fourth Compliant that the "gist of John Norton's claim against the Village" is whether the Village deprived him "of his constitutional rights to free speech and due process." Correlated to his due process claim is plaintiff's claim that he was dismissed without a hearing. Plaintiff's claims against the other defendants are likewise founded on whether the Village deprived him of his constitutional rights to free speech and due process and whether he was dismissed without a hearing.

■ We shall first consider whether the allegations in the Third Complaint and the Fourth Complaint are sufficient to allege a cause of action founded upon an infringement of plaintiff's right to free speech as protected by the first amendment. It is settled law that public employment cannot be conditioned upon a basis that infringes the employee's constitutionally protected freedom of speech. However, as a matter of good judgment, the first amendment does not require a municipality to be run as a roundtable for employee complaints over internal office affairs. (*Connick v. Myers* (1982), 461 U.S. 138, 149, 75 L. Ed. 2d 708, 721, 103 S. Ct. 1684, 1691.) To this end, the municipality, as an employer, must have wide discretion and control over the management of its personnel and internal affairs. This includes the prerogative to dismiss employees whose conduct hinders efficient operation of the municipality or its departments, and to do so with reasonable dispatch. Prolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the workplace, foster disharmony and untimely impair the efficiency of operations of the municipality. (*Arnett v. Kennedy* (1974), 416 U.S. 134, 168, 40 L. Ed. 2d 15, 41, 94 S. Ct. 1633, 1651 (Powell, J., separate opinion).) Thus, our task is to seek a balance between the freedom of the employee, as a citizen, in commenting upon matters which conceivably could be of public concern and the interest of the municipality, as an employer, in promoting the efficiency of the public services it performs through its employees. *Pickering v. Board of Education* (1968), 391 U.S. 563, 568, 20 L. Ed. 2d 811, 817, 88 S. Ct. 1731, 1734-35.

■ It is clear from the admitted facts in this case that plaintiff's conduct undermined the municipality's operation of the Department. In this regard, the manner, time and place in which plaintiff's communications were distributed become relevant. When a municipal em-

ployee affronts his superior by the manner, time and place of a communication, the municipality's institutional efficiency may be threatened not only by the content of the employee's message but also by these added factors which are present in the instant case.

■■ The context in which the dispute between plaintiff and the municipality arose is also significant in determining whether plaintiff's conduct undermined the municipality's operation of the Department. The record shows that there was a history of vocalized criticisms made by plaintiff to the fire chief, Benak. These criticisms went on for at least two years, and plaintiff himself states that "raised voices and harsh words were generated by both of us and witnessed by others" during that time. Moreover, plaintiff's criticisms relate to changes in policies which affected him personally or which he was involved in formulating. When employee speech relating to policy changes stems from an employment dispute concerning the very application of the policy changes to the speaker or to his past involvement in the creation of the policy that is to be changed, additional weight must be given to the position that the employee has threatened the necessary authority of the municipality to run its operations as it deems best. (See *Connick v. Myers*, 461 U.S. at 153, 75 L. Ed. at 724, 103 S. Ct. at 1693.) Thus, the admitted facts in this case as well as the circumstances surrounding those facts leave room for no other conclusion than that plaintiff's conduct undermined the municipality's operation of the Department.

■■ In addition, if indeed plaintiff's communications touched upon matters of public concern, it is plain that based upon plaintiff's exhibits and the facts alleged by him in his complaints, they did so in only a limited sense. We believe that the communications may more accurately be characterized as merely employee grievances concerning internal operations. Thus, the limited first amendment interest that may be involved here does not require that the municipality tolerate action which it reasonably believed would disrupt its operations, undermine the authority of its fire chief and destroy working relationships within the Department. We therefore conclude that based upon plaintiff's exhibits and the pertinent factual allegations he has made, the Third Complaint and the Fourth Complaint are not sufficient to allege a cause of action founded upon a violation of the first amendment. See *Connick v. Myers*, 461 U.S. at 154, 75 L. Ed. 2d at 724, 103 S. Ct. at 1694.

Plaintiff's attempt to allege a cause of action based upon a due process violation and a claim that he was dismissed without a hearing are equally without any legal basis. Plainly, the admitted facts do not support plaintiff's contentions.

On July 23, 1984, plaintiff had an administrative hearing to review whether he should be terminated because of his criticism of the fire chief and policies within the Department. Plaintiff and his representative submitted both oral presentations and written documents. Also, plaintiff was given added time to submit additional documents which were submitted later. As a result of the administrative hearing, on August 16, 1984, plaintiff was suspended from work for 30 days and admonished and given notice that he was subject to dismissal for similar behavior in the future. On January 5, 1985, plaintiff again circulated a memorandum that was critical of his superiors and policies within the Department. The memorandum included a statement that plaintiff felt he was "suckered" into "an insincere ploy" as a result of the actions of a committee, which included the fire chief and the assistant fire chief, and that as a result of the actions of the committee plaintiff "became a party to deceitful communication." On February 5, 1985, in accordance with the August 16, 1984, admonition and notice that plaintiff was subject to dismissal for future behavior similar to that for which he had been suspended, the Village dismissed the plaintiff.

▬▬ In our opinion, since plaintiff admits the authenticity and circulation of the January 5, 1985, memorandum, the document speaks for itself as establishing conduct by plaintiff in violation of the administrative decision of August 16, 1984, and for which he had been forewarned that he would be dismissed. Thus, it is clear that plaintiff was not entitled to another administrative hearing. Plaintiff's contentions that he was denied due process and that he was dismissed without a hearing are therefore baseless. Moreover, there being no presumption that the facts or the evidence would appear otherwise or different at another hearing, even if plaintiff's contentions had some possible foundation no useful purpose would be served by remanding the case on this point. See *Onesto v. Police Board* (1980), 92 Ill. App. 3d 183, 187, 416 N.E.2d 13, 17.

Accordingly, the order of the trial court dismissing the third amended complaint and denying plaintiff leave to file his fourth amended complaint is affirmed. ·

Affirmed.

FREEMAN, P.J., and WHITE, J., concur.