In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1811

Caren Cronk Thomas and Windy City
Hemp Development Board,

Plaintiffs-Appellants,

v.

Chicago Park District,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 2963--George M. Marovich, Judge.

Argued April 19, 2000--Decided September 14, 2000

 Before Posner, Coffey and Easterbrook, Circuit Judges.

 Posner, Circuit Judge.  Among the regulations of
the Chicago Park District governing the use of
its parks is one requiring that a permit be
obtained for an assembly, parade, demonstration,
sporting event, or other use of the park by a
group of 50 or more persons. Chi. Park Dist. Code
ch. VII sec. C. The regulation spells out the
criteria for the grant of such a permit, and the
procedures for obtaining it and for challenging
its denial, in considerable detail. The
plaintiffs, who want to use the park for rallies
in favor of repealing the laws criminalizing the
sale of marijuana, claim that the regulation
violates the free-speech clause of the First
Amendment "on its face," that is, without regard
to whether the regulation has been applied in
such a way as to infringe the right of free
speech. Forsyth County v. Nationalist Movement,
505 U.S. 123, 129-30 (1992); Lakewood v. Plain
Dealer Publishing Co., 486 U.S. 750, 755-59
(1988); North Avenue Novelties, Inc. v. City of
Chicago, 88 F.3d 441, 444 (7th Cir. 1996).
"Challenges to statutes as written, without
inquiring into their application, are appropriate
when details of implementation are
inconsequential (usually because nothing could be
done in the course of application to save the
law) or when the laws are so overbroad that the

risk of improper application leads persons to withdraw from the borderland. Fear of penalty, leading to a reduction in speech, supports the doctrine that a person whose speech lawfully could be regulated may challenge a statute achieving regulation in an improper way, or to an excessive extent." Harp Advertising Illinois, Inc. v. Village of Chicago Ridge, 9 F.3d 1290, 1291-92 (7th Cir. 1993). The plaintiffs claim that because a regulation that requires permission to hold a political rally in a "public forum" (as the Chicago Park District's parks are conceded to be) imposes a "prior restraint" on the exercise of free speech, it must, to pass constitutional muster, be free of any element of vagueness or uncertainty that might enable the regulation to be enforced in such a way as to deter or impede the exercise of this most celebrated of constitutional rights.

We do not find this a helpful formula. The historical referent of "prior restraints" is censorship, see 4 William Blackstone, Commentaries on the Laws of England 151-53 (1769), which the administration of a park system does not much resemble. The statement in the plaintiffs' brief that "denial of a permit to hold a rally is the ultimate censorship" is hollow rhetoric. It is a censor's business to make a judgment about the propriety of the content or message of the proposed expressive activity. Because he is in the business of suppressing such activity (friends of free speech are not drawn to a career in censorship), the danger of abuse is very great, especially when assessed in light of the dismal history of censorship. The regulation challenged here does not authorize any judgment about the content of any speeches or other expressive activity--their dangerousness, offensiveness, immorality, and so forth. It is not even clear that the regulation reduces the amount of speech. A park is a limited space, and to allow unregulated access to all comers could easily reduce rather than enlarge the park's utility as a forum for speech. See Cox v. New Hampshire, 312 U.S. 569, 574-76 (1941); cf. Beal v. Stern, 184 F.3d 117, 128-29 (2d Cir. 1999). Just imagine two rallies held at the same time in the same park area using public-address systems that drowned out each other's speakers. Cf. Ward v. Rock Against Racism, 491 U.S. 781 (1989). The heterogeneity of the practices that the "prior restraints" formula covers (with the present case compare Freedman v. Maryland, 380 U.S. 51 (1965), involving a movie censorship board) is reason to doubt that it can provide much assistance to judges who have to decide a novel case.

The problem is general. General language, the

language in which legal principles are couched, tends not to help much in the decision of cases in which weighty interests are on both sides of the balance that the court is asked to strike. Thus in this case there is, on the one hand, a danger in giving officials broad discretion over which political rallies shall be permitted to be conducted on public property, because they will be tempted to exercise that discretion in favor of their political friends and against their political enemies--and the advocates of legalizing the sale of marijuana and other controlled substances have very few political friends. But, on the other hand, a permit requirement is a sine qua non of managing a park system in a way that will preserve the value of the parks for the general public. Parks are primarily for recreation rather than for political and ideological agitation. They cannot be preserved in the primary use for which they are intended if any group can hold a rally of any size and length at any time with amplified sound of any volume. Clark v. Community for Creative Non-Violence, 468 U.S. 288, 296 (1984). Indeed, as we noted earlier, without regulation even the agitators might not be able to get their message across.

The competing interests cannot be weighed in the abstract in other than the grossest sense, and so a "correct" balance cannot be struck. This must give pause to any court minded to strike down a permit regulation on its face and so without consideration of its application to a particular event for which a permit was denied. A challenge to the wording as distinct from the actual application of a regulation invites semantic nit-picking and judicial usurpation of the legislative drafting function in an effort to avert, without creating loopholes, dangers at best hypothetical and at worst chimerical. The problem is well illustrated by this case as we consider the plaintiffs' objections to the regulation, all of which the district court rejected en route to granting judgment for the park district after another panel of this court reversed the grant of a preliminary injunction. MacDonald v. Chicago Park District, 132 F.3d 355 (7th Cir. 1997).

The regulation authorizes the denial of a permit on a variety of grounds none of which has anything to do with the content of expressive activity. Chi. Park Dist. Code ch. VII sec. C5(e). One is that the applicant "has on prior occasions made material misrepresentations regarding the nature or scope of any event or activity previously permitted." The plaintiffs contend that the word "material" is excessively vague. The contention is frivolous. The word is

one of the elemental legal terms, and is considered quite definite enough to form the keystone of criminal prohibitions against fraud. The residual vagueness that it shares with most words could be eliminated only by eliminating it from the regulation, but that would make the regulation more rather than less restrictive. The plaintiffs say that "misrepresentation" is vague too, and would prefer "falsehood." They have not suggested a substitute for "material" and so in effect they want us to rewrite the regulation so that it authorizes denying a permit to anyone who has told the park district a fib. All that their contention regarding the vagueness of "material misrepresentation" shows is the limits of language and so the inherent limitations of "facial" challenges.

They complain that the grounds for denial of a permit are permissive. The park district "may" deny a permit because of a misrepresentation, the failure to tender the fee, having damaged property of the park district on a previous occasion, or other grounds listed in the regulation, but it is not required to; it can forgive. The plaintiffs argue that this power of mercy arms the park district to pick and choose among applicants on political grounds. It indeed creates such a danger; but if this discretionary feature of the regulation were excised, the regulation would be more restrictive than it is (just as it would be if "falsehood" were substituted for "material misrepresentation"). This is another example of how free speech is so often on both sides of the balance in cases of the regulation as distinct from the prohibition of speech, a consideration that should make courts hesitant to invalidate such regulations. An even clearer example is a provision of the ordinance waiving the required permit fee for events protected by the First Amendment. The plaintiffs complain that this is vague, but do not indicate how it could be made less vague yet encompass the myriad activities that the First Amendment has been held to protect. Curtailing speech is an odd way of protecting speech.

The regulation requires applicants for permits to obtain liability insurance in the amount of $1 million to indemnify the park district against liability arising from a rally that might degenerate into a riot. (That is the amount of the policy, not the premium, which for the type of event envisaged by the plaintiffs would not exceed $1,200.) The plaintiffs argue ingeniously that since violence to person or property incidental to a political rally is likely to arise from the unpopularity of the cause espoused by the rally's sponsors or speakers, the requirement of buying insurance amounts to a

"heckler's veto," which the cases hold is not a proper basis for restricting free speech. Forsyth County v. Nationalist Movement, supra, 505 U.S. at 134-35; Terminiello v. Chicago, 337 U.S. 1, 4-5 (1949); Cox v. Louisiana, 379 U.S. 536, 551-52 (1965); Chicago Acorn v. Metropolitan Pier & Exposition Authority, 150 F.3d 695, 701 (7th Cir. 1998). But the amount of insurance required is not based on, or, so far as has been shown, influenced by, the nature of the event, and specifically by whether it involves controversial expressive activity likely to incite violence by onlookers or opponents. The required amount and the cost of the insurance depend only on the size of the event and the nature of the facilities involved in it (a bandstand, stage, tents, and so forth).

The park district requires that applications for permits be filed 30 days in advance--60 days if special facilities are to be involved, such as sound amplification, which unless limited can violate the city's noise ordinance. The plaintiffs argue that these periods are too long and inhibit rallies responding to fresh news and startling events. But since thousands of permit applications are filed with the park district every year, it would be burdensome to require the park to process the applications in a significantly shorter time. The park district's policy, moreover, is to allow "spontaneous" rallies in reaction to current events. The opportunities for abuse are manifest but are minimized by the fact that if there is abuse the victims can bring a judicial challenge to the permit regulation as applied to them.

The plaintiffs reserve their strongest objection for the regulation's failure to provide for searching judicial review of permit denials. They also complain about the absence of any deadline for the completion of such judicial review as the law affords them, not noticing the tension with their desire that the review be penetrating and meticulous--which takes time. In Graff v. City of Chicago, 9 F.3d 1309 (7th Cir. 1993) (en banc), the full court confronted the same issues of the adequacy and timing of judicial review in the context of an ordinance regulating newsstands on the city's sidewalks. The court was badly fractured, but counting noses one discovers that a majority believed that the judicial review procedure was good enough for a regulation of expressive activity when the regulation is not a form of censorship, that is, does not require or permit the regulatory authority to evaluate the content or message of the activity regulated. Id. at 1324-25 (plurality opinion), 1330-33 (concurring opinion). This regulation does not.

Review of agency action in Illinois is governed by an administrative procedure act (similar to the federal act, International College of Surgeons v. City of Chicago, 153 F.3d 356, 364 (7th Cir. 1998))--but only if the statute creating the agency so provides. 735 ILCS 5/3-104. If it does not so provide, and it does not with respect to the park district's denial of permit applications, the agency's action is reviewable only by means of a proceeding for common law certiorari. But this turns out to be a distinction without a difference. The proceeding is instituted in the same state court that would review the action under the administrative procedure act, Smith v. Department of Public Aid, 367 N.E.2d 1286, 1293 (1977), and although the standard of review is stated in different words from those used in that act, it amounts to the usual substantial-evidence review that is familiar from administrative law. The reviewing court does not take evidence but relies on the record compiled in the administrative proceeding and seeks only to determine whether the agency's legal conclusions are correct and the agency's factual conclusions supported by substantial evidence, e.g., Norton v. Nicholson, 543 N.E.2d 1053, 1059 (Ill. 1989), or in other words not clearly erroneous. The review process is thus the same as under the state's administrative procedure act--as indeed the Supreme Court of Illinois stated in Hanrahan v. Williams, 673 N.E.2d 251, 253-54 (Ill. 1996).

The plaintiffs argue that the park district should in every case in which it denies a permit be required to seek judicial review of its own action. The argument is based on a misreading of Freedman v. Maryland, supra, 380 U.S. at 58-59, which holds only that the government may not regulate the content of speech without judicial authorization and so does not extend to time, place, and manner licensing systems. The Supreme Court made that clear in FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 228-230 (1990) (plurality opinion), id. at 244 (concurring opinion), id. at 249 (concurring and dissenting opinion).

But their principal complaint about the judicial-review procedure we've outlined, other than the lack of a deadline for the court's decision, is that there is no provision for an oral hearing. An applicant denied a permit can appeal the denial to the park district's superintendent, and submit any documents he wants, and the district must give written reasons for its action. But all submissions are in writing and therefore, the plaintiffs argue, the record compiled before the park district is insufficient to enable meaningful judicial review of the superintendent's action. The argument is

defeated by the plaintiffs' own emphasis on the importance of expedition. The regulation requires the park district to act on a permit application within 28 days and an appeal from the denial of such an application to be decided by the superintendent within 7 days. These deadlines are too tight to permit an evidentiary hearing with oral testimony, cross-examination, and the other accouterments of a trial. The plaintiffs have to choose between orality and expedition; they refuse to do so.

The entire emphasis on judicial review and evidentiary hearings is misplaced. If a person denied a permit for reasons that he believes violate the First Amendment is dissatisfied with a paper record reviewed in state court by means of common law certiorari, he has only to bring a suit in federal district court and if the matter is urgent to seek as these plaintiffs' predecessor (the deceased MacDonald) did a preliminary injunction. See Patsy v. Board of Regents, 457 U.S. 496 (1982); Van Harken v. City of Chicago, 103 F.3d 1346 (7th Cir. 1997); Hameetman v. City of Chicago, 776 F.2d 636 (7th Cir. 1985). Given that the plaintiffs have two remedies, one in state court and the other in federal court, the possible inadequacies of the state remedy, inadequacies in any event balanced by the expedition that barring oral testimony permits, are trivial.

The plaintiffs fear that the required expedition at the administrative level will be undone by foot dragging at the state court level, since there is no deadline on when the state court must render its decision in a common law certiorari proceeding. It is of course unusual though not unknown to impose a time limit on judges, the fear being that it will both disrupt the orderly management of a judicial docket and conduce to hasty decision making. Since 42 U.S.C. sec. 1983, the statute under which federal constitutional claims are litigated in the federal courts, does not impose any requirement (with immaterial exceptions) of exhausting state judicial remedies, the victim of foot dragging in state court can always bring a parallel suit in federal court, complaining that the delay is denying him an adequate remedy for the violation of his constitutional rights.

Although a number of cases hold that judicial review of the denial of a permit must indeed be "deadlined," Baby Tam & Co. v. City of Las Vegas, 154 F.3d 1097, 1101-02 (9th Cir. 1998); 11126 Baltimore Blvd., Inc. v. Prince George's County, 58 F.3d 988, 998-1001 (4th Cir. 1995) (en banc); East Brooks Books, Inc. v. City of Memphis, 48 F.3d 220, 224-25 (6th Cir. 1995); Redner v. Dean,

29 F.3d 1495, 1501-02 (11th Cir. 1994); contra, City News & Novelty, Inc. v. City of Waukesha, 604 N.W.2d 870, 881-82 (Wis. App. 1999), cert. granted, 120 S. Ct. 2687 (2000); TK's Video, Inc. v. Denton County, 24 F.3d 705, 707-09 (5th Cir. 1994), they all involve special licensing regimes for sexually oriented businesses. They are based on Supreme Court cases involving censorship, such as the Freedman case cited earlier, or quasi-censorship, such as the ordinance at issue in FW/PBS, Inc. v. City of Dallas, supra, which required the licensing of such businesses. The government's evident concern with the content of the "speech" disseminated by such businesses argues for greater judicial vigilance than in time, place, and manner cases, in which our rejection of deadlining in Graff, 9 F.3d at 1324-25, stands uncontradicted. Cf. Jews for Jesus, Inc. v. Massachusetts Bay Transportation Authority, 984 F.2d 1319, 1327 (1st Cir. 1993). Realism required recognition of the danger that state courts might drag their heels in deciding appeals by sexually oriented businesses from denials of licenses. The permit requirement at issue here is far more general and so far as appears the permits that are denied do not relate to controversial or unpopular expression. Especially in the absence of any showing, which has not been attempted, that the Chicago Park District is trying to restrict the expression of unpopular ideas or that the state courts are not acting with reasonable promptitude on appeals from permit denials, a more relaxed attitude toward the pace of judicial review is warranted than in the case of regulation targeted at unpopular expression. Cf. Ward v. Rock Against Racism, supra, 491 U.S. at 795; Stokes v. City of Madison, 930 F.2d 1163, 1170 (7th Cir. 1991); MacDonald v. Safir, 206 F.3d 183, 191 (2d Cir. 2000).

Affirmed.