Marcelina MICHEL–TRAPAGA and Cannabis Action Network, Inc., a non-profit Louisiana corporation, Plaintiffs,

v.

CITY OF GAINESVILLE, a Florida municipal corporation, Defendant.

No. GCA 95–10172–MMP.

United States District Court, N.D. Florida, Gainesville Division.

Dec. 6, 1995.

Gary S. Edinger, Gary S. Edinger, P.A., Gainesville, FL, Richard L. Wilson, Pro Hac Vice, Richard L. Wilson, P.A., Orlando, FL, for plaintiffs.

Marion J. Radson, City of Gainesville Legal Division, Gainesville, FL, for defendant.

## ORDER GRANTING PRELIMINARY INJUNCTION

STAFFORD, District Judge.

A hearing was held on December 5, 1995 on Plaintiff's Amended Emergency Application for Preliminary Injunction (doc. 13). Defendants filed a response in opposition thereto (doc. 10). For the reasons explained below, the motion is GRANTED.

## I. BACKGROUND

Plaintiffs are the organizers of an annual event in the city of Gainesville, Florida that has come to be known as "Hempfest". For the past five years, the Hempfest has occurred on the city's Downtown Plaza.[1] On October 11, 1995, Plaintiffs applied for an event permit which would enable them to hold what they have dubbed "Gainesville's Sixth Annual Statewide Hempfest"[2] on the Downtown Plaza. Their application for an event permit[3] was denied.

In a letter dated November 3, 1995, Gainesville's City Manager denied Plaintiffs' applications for permits. This letter informed the Plaintiffs that the denial of their applications was predicated on Section III.E.5[4] of the city's Event

---

[1] "The Gainesville Downtown Plaza is a public forum and is designated as a city park under § 18–18, Gainesville Code. The Downtown Plaza is located between the County Courthouse and the County Administration Building and is located directly across the street from City Hall. In short, the heart of government in Gainesville is the Downtown Plaza and it has naturally and traditionally been the focal point for political gatherings." Verified Complaint for Declaratory and Injunctive Relief (doc. 1) at 3.

[2] In their court documents, Plaintiffs explain that the purpose of the event would be threefold: (1) to generate public support for their efforts to decriminalize the sale, possession and use of marijuana; (2) to educate the public as to the medicinal, industrial and other uses of marijuana; and (3) to raise funds to support their on-going efforts to effect a change in the drug laws of Florida and the United States. Scheduled activities at Hempfest '95 would include speeches by several participants, distribution of leaflets informing the public about the potential benefits of marijuana, and sales of souvenirs such as bumper stickers to raise money for the organization's legalization cause.

[3] Plaintiffs actually applied for three related permits from the city: (1) an "event permit" to authorize their assembly in a city park; (2) a "street closing permit" to temporarily close affected city streets; and (3) a "noise permit" to regulate the permissible volume of noise at their event.

[4] The provision reads as follows:

**E. Denial of Permit.** A permit may be denied only under the following circumstances:

*5. The event has a history of resulting in illegal activity at or during the event due to the intentional conduct of event organizers or sponsors.* In determining that the current application is for the same event as one which resulted in such illegal activity, the following criteria shall be considered:

a. The sponsors or organizers are the same or are shown to be closely affiliated.

b. The name of the event is the same, or the advertising for the event indicates it is the same event (e.g., "second annual").

c. The planned activities are the same as the ones that resulted in illegal acts at the prior event.

Policy.[5] In his letter, the City Manager pointed primarily to the existence of a so-called "doobie toss" at past events to conclude that since 1992 the event had a "history of resulting in illegal activity"—namely, distribution and use of marijuana.[6] On this basis, the city concluded that Plaintiffs' applications fell squarely within the Event Policy's definition of an event that could be proscribed via permit denial.

Upon receiving word of the denial, Plaintiffs sent a letter to the City Manager urging him to reconsider his decision. Plaintiffs indicated that Plaintiff Cannabis Action Network ("CAN"), as co-sponsor of the event in previous years, had never "engaged in, advocated, or encouraged any currently illegal activity" (doc 1, Exhibit C at 1). In addition, the letter, which was mailed on or about November 17, 1995 included the following paragraph:

> CAN is sponsoring this year's Hempfest, set for December 9, and is pledging in good faith not to advertise, encourage, or participate in any illegal activity. We will ask Festival participants to stay within the law. We will not promote or engage in an event known as the doobie toss.

*Id.* Reconsideration was denied.

Shortly thereafter, Plaintiffs filed a complaint with this Court.

## II. ANALYSIS

Plaintiffs bring an emergency application to the Court which seeks a preliminary injunction that would prevent the city of Gainesville from invoking its Event Policy to deny Plaintiffs' permit applications for the hemp festival scheduled to take place on December 9, 1995. At oral argument, Plaintiffs indicated that the Court should construe their underlying complaint as a facial chal-

lenge to the constitutionality of Gainesville's Event Policy permitting scheme. Accordingly, the Court limits its order to that issue alone.

### A. Preliminary Injunction Standard

■ To prevail in its motion for a preliminary injunction, Plaintiffs have the burden of proving four things: (1) that there is a substantial likelihood of success on the merits; (2) that there is a substantial threat of irreparable injury; (3) that their own injury outweighs any injury that would be caused to Defendants; and (4) that the injunction would not disserve the public interest. *Cuban Am. Bar Ass'n, Inc. v. Christopher,* 43 F.3d 1412, 1424 (11th Cir.1995). Failure of Plaintiffs to demonstrate even one of these four elements requires this Court to deny Plaintiffs' motion for a preliminary injunction. *Cafe 207, Inc. v. St. Johns County,* 989 F.2d 1136, 1137 (11th Cir.1993).

### 1. *Success on the Merits*

In justifying the requested preliminary injunction, Plaintiffs must first demonstrate that there is a substantial likelihood that they will prevail on the merits of their complaint when full adjudication of the matter occurs. *Cuban Am. Bar Ass'n,* 43 F.3d at 1424. The Court finds that Plaintiffs have met their burden on this issue.

At the core of this controversy is the right of the Plaintiffs to assemble and disseminate information through spoken word and written leaflet concerning their unpopular political convictions. Though the city of Gainesville has tried to craft its Event Policy in a way which would appear to regulate and restrict illegal *conduct,* and not disfavored speech, the policy in fact functions to sup-

---

> d. The organizers/sponsors cannot give adequate assurance that the planned event will be materially different from the previous event, and that the illegal activity will therefore not reoccur at or during the event.

City of Gainesville's Event Policy (doc. 1, Exhibit B) at 2–3 (emphasis added).

5. The Court notes that this "history of illegal activity" provision did not appear in the Event Policy until the policy was amended by the City Manager on November 2, 1995.

6. The City Manager explained that the "doobie toss" was mentioned in the advertisements for previous Hempfests, and was hyped and carried out at the event by the rally's principal master of ceremonies; further, he stated that the toss led to the arrest of one of the former organizers for distribution of marijuana. Other illegal acts cited in the city's letter were the smoking of marijuana by Hempfest attendees, and an unauthorized march from the Downtown Plaza to the Gainesville Plaza at the 1994 Hempfest.

press individuals' ability to exercise their First Amendment rights of assembly and speech.

■ As reflected in its memorandum and at oral argument, the city insists that the First Amendment is not implicated in this case at all. The city suggests that nothing—in the challenged Event Policy or elsewhere—would prevent Plaintiffs from staging their Hempfest on the Downtown Plaza on Saturday in the absence of a permit. Under the plain language of the city's policy, however, no individuals may assemble on the Downtown Plaza for the purpose of conveying a message to interested citizens without first obtaining permission, in the form of an Event Permit, from city officials.[7] Thus, the Event policy—which requires a permit and payment of a fee before authorizing public speaking or assemblies in a public forum—is a classic prior restraint on speech. *See Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130, 112 S.Ct. 2395, 2401, 120 L.Ed.2d 101 (1992).

■ Recognizing that the Event Policy is a prior restraint does not end the analysis, because not all prior restraints on public expression offend the Constitution. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 n. 10, 83 S.Ct. 631, 639 n. 10, 9 L.Ed.2d 584 (1963) (holding that prior restraints are not unconstitutional per se). Nonetheless, *any* system of prior restraint comes to this court bearing a heavy presumption against its constitutional validity. *Id.* at 70, 83 S.Ct. at 639.

■ The settled rule is that a system of prior restraints avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system. *Freedman v. Maryland*, 380 U.S. 51, 58, 85 S.Ct. 734, 738, 13

L.Ed.2d 649 (1965). The safeguards which must be present in a system of prior restraints are the following: first, the burden of instituting judicial proceedings and proving that the challenged expression is without constitutional protection must rest on the governmental body seeking to censor the expression; second, any restraint prior to that judicial review may be imposed only for a brief period of time and only for the purpose of preserving the status quo until the judicial determination is complete; and, third, a prompt final judicial determination must be assured. *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 560, 95 S.Ct. 1239, 1247, 43 L.Ed.2d 448 (1975).

■ The Court finds that the current state of the record supports Plaintiffs' position that there is a substantial likelihood that they will be able to demonstrate that the city of Gainesville's newly promulgated Event Policy fails to provide citizens (not just these plaintiffs) with the necessary procedural safeguards which would render these prior restraints on expression free from constitutional infirmity. First of all, the text of the Event Policy is wholly devoid of any mention of an applicant's ability to obtain judicial review—prompt or otherwise—of an adverse decision by the City Manager.[8] Moreover, the Event Policy does not require the city to bear the burden of seeking judicial review of its decisions to deny individuals' applications for event permits; thus, applicants such as the Plaintiffs are forced to endure a potentially protracted and onerous course of litigation in order to exercise their protected rights of speech and assembly. *Freedman*, 380 U.S. at 58, 85 S.Ct. at 738.

In addition, because the city's policy fails to provide any provision for judicial review, that policy gives no assurance to a denied

---

7. The Event policy includes the following provision:

E. PERMITS
A. Types of permits. The following permits may be required for an event:
4. Event Permit. ***An Event Permit is required for any event on the Downtown Plaza,*** City Hall Mart, other City park facilities, *or* City streets; *or* any activity that will require support services from two or more City Departments.

(Emphasis added).

8. The Court notes in passing that the Eleventh Circuit has explained that a state's statutory or common-law mechanism for review of administrative decisions does not satisfy the considerable procedural protections for prior restraints as laid out in *Freedman, Southeastern Promotions,* and their progeny. *Redner v. Dean*, 29 F.3d 1495, 1501 n. 9 (11th Cir.1994).

applicant that the resulting restraint on freedoms of expression will be imposed only for a brief and specified period of time. Indeed, under the policy as it is written, that restraint can seemingly remain in force forever.

Beyond these procedural omissions of the city's Event Policy, there is a substantive flaw in the policy. The event permit policy promulgated by the city reflects a municipal belief that individual citizens, in effect, forfeit their First Amendment privilege to receive permits for future rallies on public property once the City Manager decides that those citizens· have engaged in "intentional conduct" which resulted in "illegal activity at or during" a past event. The Court is not aware of any case in which an American court has upheld a governmental body's attempt to justify a prior restraint of protected First Amendment expression on grounds of previous criminal behavior by the speaker in the course of making a speech. The Court believes that *Southeastern Promotions*, 420 U.S. at 558–59, 95 S.Ct. at 1246–47, *Vance v. Universal Amusement Co., Inc.*, 445 U.S. 308, 311 n. 3, 100 S.Ct. 1156, 1159 n. 3, 63 L.Ed.2d 413 (1980), and *Gayety Theatres, Inc. v. City of Miami*, 719 F.2d 1550, 1552 (11th Cir.1983), all lead to the conclusion that the Event Policy and its "history of illegal activity" provision amount to a constitutionally impermissible prior restraint on Plaintiffs' protected rights to speech and assembly.

As the Supreme Court explained in *Southeastern Promotions*, our society has chosen to value individuals' freedom to express their views, however objectionable, more highly than society's compulsion to stifle and punish criminal acts. As it said:

The presumption against prior restraints is heavier—and the degree of protection broader—than that against limits on expression imposed by criminal penalties. Behind the distinction is a theory deeply etched in our law: *a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand.* It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable.

420 U.S. at 558–59, 95 S.Ct. at 1246–47 (emphasis added).

Just as it would be constitutionally impermissible to allow local governments to base their decisions to deny event permits on their own subjective anticipation of what a person will say at a planned public event, so, too, would it be constitutionally objectionable to allow local governments to justify permit denials on their own judgment of what persons may or may not do at that event. Yet that is what the city of Gainesville has done in this case. City officials have made the determination that because Plaintiffs have sponsored events which, in the past, have included certain illegal activities—distribution of marijuana, unauthorized parades through city streets—it is therefore likely that those (or other) illegal activities will take place at any future events that they sponsor. The First Amendment does not allow such presumptions.

Based on these procedural deficiencies in Defendant's Event Policy, as well as the considerable substantive infirmity with the policy's "history of illegal conduct" provision, the Court finds that there is a substantial likelihood that, at a final hearing, Plaintiffs will prevail on the merits of their claim that the Event Policy is unconstitutional.

### 2. *Irreparable Injury*

Plaintiffs second task is to demonstrate to the Court that, in the absence of a preliminary injunction, there is a substantial threat that they will suffer irreparable injury as a result of the defendant's complained-of act. *Cuban Am. Bar Ass'n*, 43 F.3d at 1424. It is well-settled in this Circuit that the loss of First Amendment freedoms, for even minimal periods of time, constitutes irreparable injury justifying the grant of a preliminary injunction. *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B 1981); *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir.1983). Based on this established precedent, Plaintiffs have met their burden of proving irreparable injury. Without this injunction, Plaintiffs could be deprived of their First Amendment rights of speech and assembly, which deprivations con-

stitute the irreparable injury needed for preliminary injunction purposes.

### 3. *Balancing of Harms*

■ The third burden placed on Plaintiffs is to show that the injury they would suffer in the absence of a preliminary injunction outweighs any injury that would be caused to Defendants if such an injunction were granted. *Cuban Am. Bar Ass'n*, 43 F.3d at 1424. Plaintiffs argue that the city has no valid interest in enforcing what is in all likelihood an unconstitutional policy so as to limit the Plaintiffs' First Amendment rights. While denying an event permit to Plaintiffs would cause irreparable injury to them in the form of abridging their First Amendment rights, the Court cannot conceive of a properly-considered "harm" that would fall on the city as a result of the issuance of this injunction. Accordingly, the Court finds that Plaintiffs have met their burden here as well.

### 4. *Public Interest*

■ Finally, Plaintiffs have the burden of showing that the requested injunction would not disserve the public interest. *Cuban Am. Bar Ass'n*, 43 F.3d at 1424. As Plaintiffs note in their memorandum, an injunction which prevents the enforcement of a likely unconstitutional ordinance does not disserve the public interest. As the Supreme Court has written, "[T]he First Amendment reflects a 'profound national commitment' to the principle that debate on public issues should be uninhibited, robust and wide open." *Boos v. Barry*, 485 U.S. 312, 324, 108 S.Ct. 1157, 1165, 99 L.Ed.2d 333 (1988).

The message conveyed by Plaintiffs may not win the approval of the majority of Gainesville's citizens or of citizens elsewhere in the Republic. Suppression of the Plaintiffs' message, however, will not serve the interest of *any* Gainesville citizens—including those who are vehemently opposed to Plaintiffs' beliefs. By upholding Plaintiffs' right to gather and speak out in favor of legalizing the sale, distribution and use of marijuana, this Court does not affirm the substance of this message; rather, it affirms the ability to deliver that message in public. The freedom of speech of every citizen of this nation is reinforced by this order, including the freedoms of those citizens who disagree with these Plaintiffs' beliefs.

## III. CONCLUSION

In conclusion, the Court finds that Plaintiffs have carried the four-part burden necessary to support their motion for a preliminary injunction. The Court therefore GRANTS Plaintiffs' Amended Emergency Application for a Preliminary Injunction (doc. 13).

The city of Gainesville shall issue Plaintiffs an Event Permit authorizing them to hold a rally on the Downtown Plaza on December 9, 1995. Plaintiffs shall submit another check in the amount of $225 to Defendant as a permit fee and damage deposit. Defendant shall make all normal arrangements with affected city employees to ensure that Plaintiffs' rally can proceed as scheduled.

While the Court is constrained under binding constitutional precedent to issue this preliminary injunction, it is appropriate to remind the Plaintiffs that while this order upholds their right to assemble and advocate the legalization of marijuana through amendments to our nation's drug laws, it *in no way* provides them with immunity from those laws as they currently exist. Participants may speak out on what they perceive to be relevant political issues, but the moment they "light up" or "toss" out their beloved hemp, their constitutionally-protected advocacy has turned to criminally-prosecutable conduct. If such criminal acts do occur on the Downtown Plaza, law-breaking Hempfest participants could well find themselves speaking out on their "issues of political concern" within the cramped confines of a jail cell.

It is hereby

**ORDERED AND ADJUDGED:**

Plaintiff's Motion for Preliminary Injunction is GRANTED.

**DONE AND ORDERED.**