FLORIDA CANNABIS ACTION NET-
WORK, INC., a Florida not for profit
corporation, Kevin Aplin, Scott Bled-
soe, and Joe Tacl, Plaintiffs,

v.

THE CITY OF JACKSONVILLE, a
Florida Municipal Corporation,
Defendant.

No. 3:00–CV–544–J–20TJC.

United States District Court,
M.D. Florida,
Jacksonville Division.

March 8, 2001.

Richard L. Wilson, Law Office of Richard L. Wilson, Orlando, FL, Gary S. Edinger, Law Office of Gary Edinger, Gainesville, FL, for Plaintiffs.

Cindy A. Laquidara, Michael B. Wedner, Ernst D. Mueller, General Counsel's Office, City of Jacksonville, Jacksonville, FL, for Defendant.

## ORDER

SCHLESINGER, District Judge.

Before the Court is Plaintiffs' Motion for Partial Summary Judgment as to Facial Unconstitutionality of Chapter 191 of the Jacksonville Ordinance Code (Doc. No. 23, filed September 26, 2000), Defendant's Opposition to the Motion (Doc. No. 31, filed December 29, 2000), and Plaintiffs' Reply Brief (Doc. No. 37, filed January 26, 2001). On February 22, 2001, the Court heard oral argument on Plaintiffs' Motion.

## I. Background

This case presents a First Amendment challenge to Defendant City of Jacksonville's ("City") permitting scheme for "festivals." Plaintiffs Aplin, Bledsoe and Tacl are self-described activists in a national political movement seeking to decriminalize the possession and distribution of marijuana, particularly for medicinal purposes. Plaintiff Cannabis Action Network ("CAN") is a not for profit corporation formed and operated for the same purposes. Beginning in November 1999, Plaintiffs informed the City that they desired to hold a public rally, deemed the "Hempfest," at the Jacksonville Metropolitan Park ("Metro Park"). Metro Park is a public forum located in Jacksonville, Florida. The stated purposes for the rally were: to generate public support for Plaintiffs' efforts to change the laws of Florida and the United States prohibiting the sale, possession, and use of marijuana; to educate the public concerning the beneficial uses of marijuana; and to raise funds to support the Plaintiffs' efforts to effect legal changes. The rally was to include speeches, distribution of literature, sale of souvenirs, and musical performances.

Plaintiffs anticipated that the rally would occur on June 17, 2000. On May 25, 2000, Plaintiffs filed a Motion for Preliminary Injunction in this Court seeking to require the City to issue a "festival permit" without conditions or alternatively, an injunction preventing the City from enforcing Chapter 191 of the Jacksonville Ordinance Code, which they claimed constitutes an unconstitutional prior restraint on free speech.

Chapter 191 requires that any person who wishes to stage, promote, or conduct a "festival" in Jacksonville must first obtain a "festival permit" from the Director of Recreation and Public Affairs ("Director"). Ord.Code § 191.103. In order to obtain a festival permit an applicant must submit to the Director, at least ninety days in advance of the festival, plans for "adequate" waste disposal, medical facilities, parking

facilities, security and crowd control, as well as names and addresses of the event's promoters, the location and time of the festival, and estimated attendance. *Id.* § 191.104. These plans are subject to the approval of the Public Health Officer and the Sheriff. In addition, the applicant must submit proof of various types of liability insurance coverage in amounts that are prescribed under the Ordinance, *see* Ord.Code § 191.104, and post a "faithful performance" bond of $100,000. *Id.* § 191.105.

The Ordinance then sets forth the grounds under which the Director may deny a permit application. Because this section is the gravamen of Plaintiffs' constitutional attack, the Court will quote it in its entirety:

> 191.06 Issuance of permit; grounds for denial. Upon submission of the items required by ss.191.104 and 191.105, the filing of the required approvals by the Public Health Officer and the Sheriff, and the payment of an application fee of fifteen dollars for each hour during which the festival will be conducted (not to exceed eight hours in any twenty-four hour period), the Director of Recreation and Public Affairs shall issue a permit for the staging, promoting or conducting of a festival at the time and location named in the application, except that the Director shall deny the permit if:
>
> (a) The applicant, any of the persons participating directly or indirectly in the financial backing of the festival, or any of the performers at the festival have been convicted within the last three years preceding the date of the application of a violation of:
>
> (1) This chapter;

> (2) An ordinance or law of another governmental body regulating festivals and similar activities; or
>
> (3) An ordinance or law of the city or any other governmental body regulating or prohibiting drugs or narcotics.
>
> (b) A performer scheduled to appear at the festival has failed to appear at three or more separate musical engagements within the year preceding the date of the application, without a lawful contractual defense.
>
> (c) The applicant has made any false representation in the application.
>
> The Director shall grant or deny the permit within twenty days following the filing of an application.

Ord.Code § 191.106.

In their Motion for Preliminary Injunction, Plaintiffs argued that the permitting scheme devised under Chapter 191 constitutes an unlawful prior restraint on free speech in violation of the First Amendment. On June 13, 2000, the Court denied the Motion because it found insufficient evidence in the record to conclude that Plaintiffs' proposed rally would have fallen within Chapter 191's definition of "festival." *See* Doc. No. 17.[1] Because Plaintiffs would have lacked standing to challenge Chapter 191 if its rally were not a "festival" (and therefore not subject to the Ordinance), the Court concluded that Plaintiffs had failed to demonstrate a substantial likelihood of success on the merits. However, in denying Plaintiffs a preliminary injunction the Court also expressed some concerns with Chapter 191, specifically the absence of any judicial review provision and the blanket denial of permits to applicants who had been convicted of a drug

---

1. Section 191.102 defines "festival" as: "... any gathering of persons for the primary purpose of listening to or participating in outdoor musical entertainment offered to the general public or a substantial segment thereof. The term *festival* shall not include a gathering for another primary purpose, such as athletic events, religious services, fairs or expositions, even though outdoor musical entertainment may be incidental thereto." Ord.Code § 191.102. Clearly, the line between an event whose "primary purpose" is musical entertainment and one where such entertainment is merely "incidental" is easily manipulable. Since the Hempfest was supposed to feature both musical and nonmusical forms of expression, the Court could not, absent a more developed record, determine whether Plaintiffs' proposed rally would likely be deemed a "festival" under Chapter 191.

related offense within the previous three years.

After the Court denied Plaintiffs' Motion for Preliminary Injunction, the City acknowledged that Plaintiffs' rally was in fact a "festival" within the meaning of Chapter 191. *See* Doc. No. 23 at Exh. B, Defendant's Response to Plaintiffs' Request for Admissions. Nevertheless, it allowed the rally to proceed without a permit. According to an affidavit submitted by Theresa O'Donnell Price, Director of Special Events for the City, some 500 people were at the rally, despite Plaintiffs' earlier estimates that over 5,000 would attend. Ms. Price also indicated that although the City was aware that Plaintiff Tacl had been convicted of a drug violation within one year of his application for a festival permit, he and the other Plaintiffs were allowed to proceed with the rally · because the City does not enforce that section of the law.

In their Motion for Partial Summary Judgment, Plaintiffs essentially renew the same constitutional objections raised in the Motion for Preliminary Injunction. They claim that since the City has admitted that their rally was a "festival" for purposes of Chapter 191, the questions regarding standing have been resolved and the Court should therefore find certain portions of Chapter 191 to be facially unconstitutional.[2]

Plaintiffs' Motion asserts that Chapter 191 is facially unconstitutional for the following reasons:

1) It is an unlawful prior restraint on freedom of speech in that: (a) the Director may deny permits in his unfettered discretion; (b) the Ordinance does not require a final decision on a permit application within a specified, brief period of time; (c) the Ordinance does not provide for prompt judicial review; and (d) the Ordinance does not require the City to initiate judicial review proceedings if an application is denied;

2) It allows the Director to suspend or revoke a festival permit without a hearing, without judicial review, and without prior Court approval;

3) The fee assessed by the City for the use of Metro Park and the insurance and bond requirements contain no provisions for waiver or adjustment of the amount to coincide with the size or risk of the event and impose an unreasonable burden on First Amendment rights; and

4) The blanket prohibition from participation in festivals against persons convicted of drug crimes is an illegal prior restraint that is not narrowly tailored to further a substantial government interest.

The City counters that the Court need not and should not address the constitutional issues raised in Plaintiffs' Motion because the case is moot and because Plaintiffs lack standing to bring a facial challenge to Chapter 191. Alternatively, the City argues that to the extent that Plaintiffs have standing to bring this challenge, their Motion should still be denied and this case dismissed because Chapter 191 constitutes a valid "time, place and manner" restriction that does not purport to suppress speech based on its content.

## II. Justiciability

### A. *Mootness*

■ Before the Court may properly rule on the constitutional issues raised in Plaintiffs' Motion, there must be a "present, live controversy in order to 'avoid advisory opinions on abstract propositions of law.'" *Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater,* 777 F.2d 598, 604 (11th Cir.1985) (quoting *Hall v. Beals,* 396 U.S. 45, 48, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969)). Furthermore, as this Court noted in denying Plaintiffs' Motion

---

**2.** Plaintiffs have also brought an "as applied" challenge against Chapter 191 with respect to certain police and staffing costs, however these were not addressed in the Motion for Partial Summary Judgment. Accordingly, the Court will only consider Plaintiffs' facial challenge to the Ordinance at this time.

for Preliminary Injunction, federal courts should not rule on constitutional issues where other, non-constitutional dispositive grounds are available. *See* Doc. No. 17 at 5 (citing *Jean v. Nelson,* 472 U.S. 846, 854–55, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985)).

In opposing Plaintiffs' Motion, the City argues that there is no longer any live controversy between the parties because Plaintiffs were allowed to proceed with their event without a permit. If the June 2000 rally were the only rally Plaintiffs ever intended to hold in Metro Park, the Court might be inclined to agree. However, the record in this case shows that the June 2000 rally was the third annual Hempfest Plaintiffs have staged in Jacksonville, and Plaintiffs have indicated that they intend to continue sponsoring the event annually. Moreover, during the February 2001 hearing both parties represented to the Court that Plaintiffs had in fact notified the City of their intention to stage a similar rally in Jacksonville in 2001.

In *Bledsoe v. City of Jacksonville Beach,* 20 F.Supp.2d 1317, 1322 (M.D.Fla.1998), which involved circumstances similar to this case, this Court found that a constitutional challenge was ripe for adjudication even though the plaintiffs could not point to any actual harm they had suffered from the challenged ordinance. *See id.* at 1322. Noting that the purpose of allowing facial challenges is "to protect the rights of those who would otherwise come forward to exercise their First Amendment right," the Court in *Bledsoe* concluded that the plaintiffs had standing even though they had not yet been denied a permit, and specifically rejected the notion that it lacked jurisdiction to decide the case without a showing of actual harm. *Id.* (citing *United States v. Gilbert,* 130 F.3d 1458 (11th Cir. 1997)). In the instant case, while Plaintiffs did not suffer any constitutional harm with respect to the June 2000 rally, by choosing to stage the Hempfest they were exposed to the threat of sanctions. While in other contexts the mere threat of harm may be insufficient to confer standing, *see, e.g., Hallandale Professional Fire Fighters,*

*Local 2238 v. City of Hallandale,* 922 F.2d 756 (11th Cir.1991) (addressing speech in the employment context), that is not the case *sub judice* where Plaintiffs have shown that they are likely to, and in fact have, petitioned the City to use its public fora for future rallies and thus risk having their First Amendment rights curtailed if denied a festival permit.

The fact that the City chose not to enforce Chapter 191 with respect to the June 2000 rally does not affect this conclusion. The whim, self restraint, or even the well reasoned judgment of a government official cannot serve as the lone safeguard for First Amendment rights. *See Bledsoe,* 20 F.Supp.2d at 1324 ("The fact that the City has never used the Policy as a filter is a Constitutionally insufficient justification.").

B. *Standing*

The City also argues that Plaintiffs lack standing because under a separate section of Chapter 191, Plaintiffs could have exempted themselves from the permit requirement. Specifically, the City cites Ordinance Code section 191.110, which states that the permitting requirements shall not apply if the festival promoter: 1) files an affidavit that his best estimate of probable attendance at the festival is 5,000 persons or less; and 2) the Director concurs in the estimate in writing and issues the promoter an exemption certificate. Ord.Code § 191.110.

In the months leading up to the June 2000 rally, Plaintiffs apparently submitted multiple estimates in regard to the number of anticipated attendees, including at least one estimate of over 5,000 people. Although the record is somewhat vague, the Director evidently adopted the 5,000–plus estimate and thus found section 191.110 to be inapplicable. According to Ms. Price's affidavit, however, far fewer than 5,000 persons actually attended the 2000 Hempfest. Having personally observed the event, she estimates that no more than 500 people were present. *See* Doc. No. 33 at ¶ 7, Supplemental Affidavit of Theresa

O'Donnell Price. Based on Ms. Price's observation, the City suggests that Plaintiffs could easily avoid any future confrontation with Chapter 191 by simply submitting a more "realistic" attendance estimate for future rallies.

This argument misses the mark for a number of reasons. First, and most obviously, there is the possibility that the 2001 Hempfest may generate attendance in excess of 5,000 people. Plaintiffs have submitted evidence showing that the instant litigation and threat of arrest may have adversely affected the turnout for the June 2000 rally. More importantly, even assuming that Plaintiffs wildly inflated their estimate as the City insinuates, they would still face a potential obstacle to free expression under Chapter 191 in that pursuant to the Ordinance they are still required to apply to the Director for either a festival permit or an exemption. Consequently, Plaintiffs would still be bound under section 191.110 by the Director's judgment as to whether the exemption applies. If Plaintiffs were to estimate an attendance of over 5,000, they would need to obtain a permit. If they were to submit an attendance estimate of 5,000 or less, the Director could, in his sole discretion,[3] conclude that the estimate was inaccurate and decline to issue the exemption. Either way, their ability to freely disseminate their message is directly affected by the Ordinance. *See Cannabis Action Network v. City of Gainesville*, 231 F.3d 761, 768 (11th Cir. 2000) ("Facial challenges are permitted on the rationale that when a prior restraint allegedly contains a risk of delay or arbitrary censorship, 'every application of the statute create[s] an impermissible risk of suppression of ideas.'" (internal citations omitted)). Accordingly, the Court finds that section 191.110 does not affect Plaintiffs' standing to raise a constitutional challenge to Chapter 191.

## III. Constitutionality of Chapter 191

Having concluded that this case is ripe for adjudication and that Plaintiffs have standing to raise a constitutional challenge to Chapter 191, the Court may now address the substantive issues raised in Plaintiffs' Motion.

### A. *Prior Restraint*

Plaintiffs have argued that this case should be considered under the "prior restraint" doctrine. The Court agrees. Under First Amendment jurisprudence, a "prior restraint" is defined as "any statute or ordinance which vests local officials with discretionary power to issue a permit that is required as a prerequisite to the use of public places for First Amendment activities." *City of Gainesville*, 231 F.3d at 768 (citing *Kunz v. People of the State of New York*, 340 U.S. 290, 293–94, 71 S.Ct. 312, 95 L.Ed. 280 (1951)). Although prior restraints are not *per se* unconstitutional, they must be carefully scrutinized to guard against the unreasonable curtailment of free expression. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 225, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). To ensure that prior restraints do not run afoul of the Constitution, courts have required that a permitting scheme leave relatively little discretion in the hands of public officials regarding whether to grant a permit. *See, e.g., City of Gainesville*, 231 F.3d at 771 ("[A] scheme that places unbridled discretion in the hands of a government official or agency threatens unconstitutional censorship.") (citing *FW/PBS, Inc.*, 493 U.S. at 225–26, 110 S.Ct. 596 (1990)); *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176

---

3. The exemption scheme may itself represent an unconstitutional prior restraint on free speech in that section 191.110 fails to set forth any objective standards for the Director to apply in evaluating the accuracy of an applicant's attendance estimate. Because Plaintiffs have not moved the Court to declare section 191.110 unconstitutional, however, the Court need not specifically resolve that question today. Nevertheless, the issue is pertinent insofar as the unfettered discretion granted to the Director under section 191.110 impacts upon Plaintiffs' standing by increasing their exposure to constitutional injury under Chapter 191.

F.3d 1358, 1361 (1999) ("An ordinance that gives public officials the power to decide whether to permit expressive activity must contain precise and objective criteria on which they must make their decisions; an ordinance that gives too much discretion to public officials is invalid.") (citing *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969)).

The permitting scheme devised under Chapter 191 is a classic example of a prior restraint. It vests City officials with the discretion to issue permits that represent a necessary prerequisite to using public fora for disseminating certain types of protected expression, namely music.[4] This finding does not necessarily render Chapter 191 unconstitutional. It does, however, require this Court to consider two essential questions: first, whether public officials have too much discretion, thereby creating the opportunity to curtail protected expression; and second, whether the permitting scheme contains adequate procedural safeguards for protected expression. *See FW/PBS*, 493 U.S. at 225, 110 S.Ct. 596 (noting the "twin evils" associated with prior restraints: unbridled discretion of officials and failure to provide for adequate procedural safeguards).

### 1. Officials' Discretion

■ In *Lady J. Lingerie, supra,* the Eleventh Circuit struck down a municipal ordinance that would have required the plaintiff to obtain a license [5] before being able to operate an adult entertainment establishment in certain parts of the City of Jacksonville. Pursuant to that ordinance, city officials were required to weigh several criteria before acting upon an application, including "compatibility" with existing contiguous property uses,

"environmental impact," the potential "detrimental effect" on traffic, parking conditions, and/or future contiguous properties, and the potential for creating "objectionable or excessive" disturbances in the surrounding vicinity. *Id.* at 1369–70. The Court found these subjective criteria to be impermissibly broad, noting that:

> None of the nine criteria is precise and objective. All of them—individually and collectively-empower the zoning board to covertly discriminate against adult entertainment establishments under the guise of general "compatibility" or "environmental" considerations.... Even the seemingly-innocuous fire safety provision is too broad. It does not say 'there must be × number of doors per square foot'; it says that buildings must be *'sufficiently accessible* to permit entry onto the property by fire, police, rescue and other services'.... This is neither precise nor objective.

*Id.* at 1362.

Chapter 191 contains similarly subjective criteria, which in turn create a potential for covert content-based discrimination. Section 191.104 allows the Director to deny a festival permit application if the applicant's proposed plans for sanitation, medical facilities, parking, and security are not "adequate." Ord.Code § 191.104. There are no objective guidelines regarding what kind of security plans, for example, will be considered adequate; rather, such determinations are apparently left entirely to the Director's discretion. Moreover, the Ordinance requires that the plans be approved by the Public Health Officer and the Sheriff before a permit can be issued, yet there are no guidelines beyond "adequacy" with respect to when

---

4. Although music in the abstract is not necessarily entitled to constitutional protection, "[m]usic, *as a form of expression and communication,* is protected under the First Amendment." *Ward v. Rock Against Racism,* 491 U.S. 781, 790, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (emphasis added).

5. The Ordinance actually required that the plaintiff obtain a zoning exception, however

the Court noted that under the particular circumstances of the case, an exception was the equivalent of a license. *See Lady J. Lingerie,* 176 F.3d at 1361. Similarly, the terms "permit" and "license," which are sometimes used interchangeably throughout this Order, are essentially the same for purposes of the Court's analysis in this case.

these officials must approve a plan. Without impugning these officials' character or judgment, which are not at issue in this case, where there exists even the *potential* for government officials to unlawfully restrain free expression, a permitting scheme cannot be sanctioned by this Court. The unfettered discretion that Chapter 191 places in the hands of City officials creates such a potential, resulting in an unreasonable risk to First Amendment liberties.

## 2. Procedural Safeguards

■ Apart from concerns with officials' discretion, a prior restraint must also contain procedural protections to ensure that constitutionally protected speech is not suppressed. Accordingly, the Eleventh Circuit recently held in *Cannabis Action Network v. City of Gainesville*, 231 F.3d 761 (11th Cir.2000), that to ensure fair and timely decisions on license applications, courts must apply the procedural safeguards devised by the Supreme Court in *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). These three safeguards, all of which must be present in order for a licensing scheme to pass constitutional scrutiny, are that: (1) upon denial of the right to speak, the censor must bear the burden of initiating judicial proceedings, as well as the burden of proof once in court; (2) any restraint prior to judicial review can be imposed only for a specified and brief time period during which the status quo is maintained; and (3) there must be the assurance of prompt judicial review in the event that the speech is erroneously denied. *Freedman*, 380 U.S. at 58–59, 85 S.Ct. 734.

*Freedman* dealt with the constitutionality of movie censorship laws that expressly sought to restrict content, however in *City of Gainesville* the Eleventh Circuit applied the *Freedman* factors to two "content neutral" ordinances, one that required a permit for the use of sound amplification equipment, and another requiring a permit

to gather in the city's parks. Although the ordinances did not expressly attempt to limit speech on the basis of content, the court nevertheless likened them to unconstitutional prior restraints that could potentially function as "a device for suppression of free communication of ideas." *Id.* at 770 (quoting *Saia v. People of State of New York*, 334 U.S. 558, 562, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948)). Other courts have similarly held that the *Freedman* protections apply to a prior restraint even where the restraint is designed for a purpose wholly unrelated to filtering content. *See, e.g., Lady J. Lingerie, supra* (zoning ordinance that applied to all applicants—not just adult businesses—unconstitutional for failure to satisfy *Freedman* safeguards); *Michel–Trapaga v. City of Gainesville*, 907 F.Supp. 1508 (N.D.Fla.1995) (city preliminarily enjoined from enforcing policy requiring permit for any "event" held in public fora where policy lacked *Freedman* protections).

The City cites a recent decision by a panel of the Seventh Circuit in *Thomas v. Chicago Park District*, 227 F.3d 921 (7th Cir.2000) as supporting the proposition that the *Freedman* safeguards should be limited to licensing regimes that censor specific content, such as adult entertainment. The *Thomas* Court held that a *Freedman*-type prior restraint analysis was of little utility when applied to a permitting ordinance that did not seek to regulate the content of expressive activity, but merely sought to limit the activity itself. In the Court's view, a more "relaxed" form of judicial review was warranted for such content-neutral restrictions. *Id.* at 927.[6]

Although *Thomas* presented facts and circumstances similar to this case, this Court respectfully disagrees with the Seventh Circuit's reasoning in that decision. As noted above, the danger in a permitting scheme that seeks to restrict speech in advance is that public officials will be able

---

**6.** The Court did not clearly state what standard of judicial review it was applying in

concluding that the ordinance passed constitutional muster.

to "filter" protected speech by selectively granting permits on the basis of content. This danger can exist even where the permitting scheme seeks only to restrict expressive *activity,* rather than expression itself, because an overly broad permitting scheme can still provide officials with a mechanism for covertly discriminating on the basis of content. More importantly, the *Thomas* decision is inconsistent with the Eleventh Circuit's holding in *City of Gainesville,* which is binding authority on this Court.[7]

The City also argues that the *Freedman* safeguards are unnecessary as long as Chapter 191 is reasonable as to the "time, place, and manner" in which it seeks to restrict speech.[8] The Eleventh Circuit recently applied this standard to a municipal ordinance similar to Chapter 191 in *Coalition for the Coalition for the Abolition of Marijuana Prohibition ("CAMP") v. City of Atlanta,* 219 F.3d 1301 (11th Cir.2000). In *CAMP,* the Court held that a permitting scheme that was content neutral, narrowly tailored to serve a significant government interest, and that offered ample alternatives for protected expression, satisfied the First Amendment. *See id.* However, as the Court noted in *City of Gainesville,* the challenged ordinance in *CAMP* had already been amended after the district court held that the original version of

Atlanta's ordinance was procedurally inadequate under *Freedman.* In response, the city amended its permit ordinance and in a second suit the *CAMP* plaintiffs did not renew their *Freedman*-based challenge. Accordingly, the Eleventh Circuit never considered the constitutionality of the Atlanta ordinance's procedural safeguards under *Freedman.* Moreover, even if this Court were to interpret *CAMP* as dispensing with the *Freedman* safeguards, it would nevertheless conclude that *CAMP* has been overruled by *City of Gainesville.*[9]

Accordingly, this Court must consider whether the *Freedman* safeguards are adequately represented by Chapter 191. If they are not, the Court must strike the Ordinance as being an unconstitutional prior restraint on free speech.

### a) *Initiation of Judicial Proceedings*

Under *Freedman,* the government agency bears the burden of initiating judicial review in cases where the permit requirement is not generally directed toward commercial enterprises. *See City of Gainesville,* 231 F.3d at 774–64. Citing the Supreme Court's opinion in *FW/PBS v. Dallas,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), where a plurality of the Justices held that an adult entertainment business bore the burden

---

7. The City argues that *City of Gainesville* is distinguishable from this case. *City of Gainesville* involved a "parade permit" that required a permit "for persons to assemble or congregate in crowds in such numbers as to block the use of any sidewalk or street of the city." *City of Gainesville,* 231 F.3d at 772. In contrast, Chapter 191 requires a "festival permit" for public gatherings whose primary purpose is musical entertainment. The City points out that whereas in *City of Gainesville* a permit was necessary for any large public gathering, Plaintiffs are free to communicate their message in Metro Park or any other public venue so long as the message is not expressed predominately through music. While Chapter 191 may be less restrictive than the ordinance in *City of Gainesville,* it still triggers First Amendment concerns. Chapter 191, like the Gainesville ordinance, creates a permitting scheme that allows public officials to restrict expressive activity. The

fact that only some forms of music may be protected expression while others, such as an instrumental orchestra performance, are not, does not vitiate the need to establish safeguards for the protected expression. *See Ward v. Rock Against Racism,* 491 U.S. 781, 790, 109 S.Ct. 2746 (1989); *supra* note 4. Thus, contrary to the City's assertion, the Court finds the Eleventh Circuit's holding in *City of Gainesville* to be applicable to this case.

8. While the Court has doubts as to whether Chapter 191 is reasonable in terms of the time, place and manner in which it restricts speech, this is not presently at issue before the Court.

9. The *CAMP* decision was issued on July 27, 2000, approximately three months before *City of Gainesville.*

of initiating judicial proceedings to challenge a license denial, the Eleventh Circuit explained in *City of Gainesville* that in the case of a business licensing scheme, where the license represents the key to the applicant's obtaining and maintaining a business, the applicant has a strong financial incentive to pursue a license denial through litigation. *City of Gainesville*, 231 F.3d at 774. In contrast, a licensing scheme that is likely to affect groups seeking a one-time permit to engage in non-profit political activities is less likely to have such a financial incentive. Under these circumstances, the Court held, the applicant's right to speak "deserves greater protection than that outlined by the plurality in *FW/PBS*." *Id.* at 776.

■ Chapter 191 is much more akin to the ordinance in *City of Gainesville*, in which the city was required to initiate judicial proceedings, than one that would generally be applied to commercial enterprises. Despite the fact that Plaintiff CAN is certified as a corporation, it is not in business for profit. Nor is the Hempfest the type of "continuous commercial activit[y]" that would shift the burden of initiating judicial review to the applicant, even though Plaintiffs have sponsored the event more than once. *See id.* at 775. If groups such as Plaintiffs were required to initiate judicial review of prior restraints that curtailed their speech, prohibitive litigation costs would often deter them from contesting the permit denial in court. As a result, potentially unconstitutional prior restraints would be allowed to remain in effect unchallenged. While the City points to the substantial administrative burden that it will suffer if forced to initiate legal proceedings every time it denies a festival permit, the Eleventh Circuit weighed the competing policy considerations in *City of Gainesville* and concluded that the resulting burden on government is a necessary cost to protecting the First Amendment.

b) *Time Limits and Prompt Judicial Review*

The Supreme Court held in *Freedman* that wilful delay in acting upon a license application may itself constitute a covert method for discriminating on the basis of content. Accordingly, the Court held that a prior restraint that fails to place limits on the time within which the decision-maker must issue a license is impermissible. *Freedman*, 380 U.S. at 59, 85 S.Ct. 734. Although Chapter 191 requires the Director to grant or deny a permit within twenty days following the filing of an application, an application does not become complete under the Ordinance until the Public Health Officer and the Sheriff indicate their approval of the applicant's proposed plans regarding health and security issues. *See* Ord.Code § 191.106. The Ordinance contains no time limits whatsoever within which these officials must grant or deny their approval, even though such action is a prerequisite to an application's becoming "ripe". The practical effect of this incongruity is to render the twenty-day limitation illusory. *See FW/PBS, Inc.*, 493 U.S. at 227, 110 S.Ct. 596 (failure to place time limit for conducting inspection, which was a prerequisite for business to become eligible to apply for license, rendered thirty day time period within which license was to be granted illusory).

In addition, the Ordinance does not specify what happens in the event that the Director simply fails to act on an application altogether within the prescribed period. At first blush, it may appear somewhat excessive to require the City to plan for the contingency that it violates its own ordinance. However, the Eleventh Circuit has squarely confronted this issue and held that a permitting scheme must allow the applicant to begin engaging in the expressive activity for which the permit is sought in the event that the municipality fails to comply with the time limit; otherwise, the time limit is illusory. *See Redner v. Dean*, 29 F.3d 1495, 1500–01 (11th Cir.1994). This added protection, which is necessary

to prevent speech from being suppressed due to an official's dilatory conduct, *see id.*, is manifestly lacking in Chapter 191.

Regarding *Freedman*'s requirement of "prompt judicial review," the Eleventh Circuit observed in *City of Gainesville* that there is considerable ambiguity concerning whether the Supreme Court intended that standard to mean that an ordinance that imposes a prior restraint on speech must provide for prompt judicial determination or whether prompt judicial access is sufficient.[10] This Court need not resolve this question, however, because, as already noted, Chapter 191 provides no internal time limits within which a decision must be made on a permit application, and thus has the potential to indefinitely forestall any judicial review. *See Redner*, 29 F.3d at 1502 ("We find that the Citrus County Ordinance is inadequate under any interpretation of 'prompt judicial review' because it creates the risk that expressive activity could be suppressed indefinitely prior to any judicial review of the decision to deny a license"); *see also Bledsoe*, 20 F.Supp.2d at 1326 ("Without prompt notification [regarding a permit application] the aggrieved party may not be able to bring his complaint to the courts in time to prevent harm to his First Amendment rights."). Thus, no matter which definition of "prompt judicial review" this Court applies, Chapter 191 would fail under *Freedman*.

Accordingly, the Court finds Chapter 191 to be lacking in all three *Freedman* safeguards.

**B.** *Criminal Disqualification Provisions*

■ Plaintiffs claim that section 191.106(a)(3)'s blanket prohibition on granting festival permits where any of the financial backers or performers in a festival have been convicted of a drug-related offense within the preceding three years is unconstitutional. *See Fernandes v. Limmer*, 663 F.2d 619, 630 (5th Cir.1981) ("To sustain such a total abrogation of First Amendment rights, the government must show that the speech prohibited will 'surely result in direct, immediate and irreparable damage....' *New York Times Co. v. United States*, 403 U.S. 713, 730, 91 S.Ct. 2140, 2149, 29 L.Ed.2d 822 (1971) (Stewart, J., concurring). That the applicant has been convicted of a crime in the past is not a sufficient reason for his blanket exclusion in the future."). The City concedes that section 191.106(a)(3) "could be held unconstitutional under applicable law." *See* Doc. No. 31 at 7 n. 2, Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment. Nevertheless, it asserts that Plaintiffs lack standing to challenge this section of the Ordinance because it was not actually enforced against them.[11]

As noted earlier, the threat of penalty under a prior restraint is sufficient to confer standing upon parties such as Plaintiffs in the context of a First Amendment facial challenge. The fact that the City has elected not to enforce the Ordinance against Plaintiffs has no bearing on their standing to sue. *See Bledsoe*, 20 F.Supp.2d at 1324. Accordingly, the

---

**10.** The Court noted a split among the circuits, with some courts holding that "prompt judicial review" of permit/license denials means prompt judicial *determination*, while others have held that prompt judicial *access* is enough to satisfy *Freedman*. Though noting that the Eleventh Circuit has held that with respect to business licensing schemes, prompt judicial access is sufficient, *see Boss Capital, Inc. v. City of Casselberry*, 187 F.3d 1251 (11th Cir.1999), the court made clear that it was not answering the unposed question of whether *Freedman*'s requirement of "prompt judicial review" demanded prompt judicial determination in challenges not involving a

business licensing scheme. *See City of Gainesville*, 231 F.3d at 774. The Court also noted that there has been disagreement regarding whether the prior restraint must itself provide for judicial review or whether non-statutory judicial access, usually through a state's common law writ of certiorari, is sufficient. *See id.* at 774 n. 18. For reasons noted above, this Court declines to weigh in on these issues.

**11.** The record reflects that at least one of the Plaintiffs would have been affected by section 191.106(a)(3).

Court finds that the criminal disqualification provisions contained within Chapter 191 constitute an unconstitutional limitation on free speech.

## C. Fees, Insurance, and Performance Bond

Plaintiffs assert that Chapter 191's requirements that permit applicants obtain insurance in pre-determined amounts is unconstitutional because it imposes an insurmountable financial burden for many who would otherwise engage in free speech. Although section 191.104 sets forth various types and amounts of insurance that an applicant must obtain in order to be issued a festival permit, Plaintiffs appear to single out section 191.105(g)(1), requiring bodily injury liability insurance of $1 million for more than one person injured in any one occurrence. They contend that this is more than the "nominal" amount allowed under the First Amendment. See, e.g., Pritchard v. Mackie, 811 F.Supp. 665, 667–68 (S.D.Fla.1993). While $1 million sounds like a substantial amount, there is insufficient evidence in the record to determine whether it is actually more than "nominal" because the million dollar figure represents the amount of coverage, rather than the cost of the premiums to Plaintiffs. See Thomas, 227 F.3d at 925 ($1 million liability policy would not cost the plaintiffs more than $1,200 in premiums). Accordingly, summary judgment on this issue is unwarranted at this time.

The same holds true for the bond requirement. Although section 191.105 requires an applicant for a festival permit to post a performance bond of $100,000, the Ordinance gives the applicant the option of giving the City an insurance policy in lieu of a cash bond. See Ord.Code § 191.105(c). Because the Court lacks evidence regarding the actual cost of such a policy to Plaintiffs, it cannot say as a matter of law that the bond requirement is unconstitutional.

Lastly, Plaintiffs have referred to a $4,000 fee they were assessed for the use of Metro Park. The Court has found no mention of a $4,000 fee in Chapter 191. To the extent that Plaintiffs are claiming the City assessed them a fee for certain services and equipment and that such fees were unreasonable, the Court believes that this issue is best left to Plaintiffs' "as applied" challenge and is not properly considered in connection with the facial challenge.

## IV. Conclusion

The constitutional issues raised in Plaintiffs' Motion for Partial Summary Judgment are ripe for adjudication and Plaintiffs have demonstrated standing to bring a facial challenge to Chapter 191 of the Jacksonville Ordinance Code. Having considered the merits of Plaintiffs' Motion, the Court finds that Chapter 191 unconstitutionally restricts free expression by placing too much discretion in the hands of City officials and failing to implement the necessary procedural safeguards pursuant to the Supreme Court's holding in Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). The Court also finds the criminal disqualification provisions contained in Ordinance Code section 191.106(a)(3) to be unconstitutional. With respect to the issues raised in Plaintiffs' Motion concerning permit fees and insurance and bond requirements, there are material issues of fact that preclude the entry of summary judgment at this time. Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 23) is **GRANTED IN PART** and **DENIED IN PART.**

2) Plaintiffs' request for declaratory relief is **GRANTED IN PART,** and §§ 191.104(a)–(d), 191.106(a), and 191.108 of Chapter 191 of the Jacksonville Ordinance Code are declared **UNCONSTITUTIONAL.**

3) Defendant City of Jacksonville, its employees, agents and servants are hereby **ENJOINED** from enforcing any provision of Chapter 191 of the Jacksonville Ordinance Code until such time as the City

provides for internal time limits on permitting decisions in a manner not inconsistent with this Order.